**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**



**MARK STANFORD, BY AND THROUGH
ERIK PHILLIPS, AS GUARDIAN AND
CONSERVATOR OF THE PERSON OF
MARK STANFORD**

                **PLAINTIFF**

**VS.**                     **CAUSE NO.:** _3:22cv589- HTW-LGI_

**BRANDON NURSING AND REHABILITATION
CENTER, LLC, AURORA CARES, LLC, DTD
HC, LLC, D&N, LLC, DONALD T. DENZ,
NORBERT A. BENNETT, UNIDENTIFIED
ENTITIES 1-10, AND JOHN DOES 1-10
(as to the BRANDON NURSING FACILITY)**      **DEFENDANTS**

## COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, the Plaintiff, Mark Stanford, by and through Erik Phillips, as Guardian and Conservator of the Person of Mark Stanford, and for his causes of action against Defendants, states:

### I.    PARTIES

1.01    Erik Phillips is the nephew of MARK STANFORD and serves as Guardian and Conservator of MARK STANFORD, and brings this action on behalf of MARK STANFORD, and pursuant to Mississippi law.

1.02    MARK STANFORD was, at all times material hereto, a resident of Brandon Nursing and Rehabilitation Center, a skilled nursing facility located at 355 Crossgates Blvd, Brandon, MS 39042, from on or about May 12, 2017 until January 20, 2022.

1.03    Defendant, Brandon Nursing and Rehabilitation Center, LLC (hereinafter "Brandon Nursing" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of Mississippi with its principal place of business located in Rankin

County, Mississippi, and that may be served with process to its registered agent, United Corporate Services, Inc., located at 248 E. Capitol Street, Suite 840, Jackson, Mississippi 39201, or a location where said agent may be found. Brandon Nursing was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.04    Defendant, Aurora Cares, LLC (hereinafter "Aurora" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of Mississippi and that may be served with process to its registered agent, United Corporate Services, Inc., located at 248 E. Capitol Street, Suite 840, Jackson, Mississippi 39201, or a location where said agent may be found. Aurora was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.05    Defendant, D&N, LLC, (hereinafter "D&N" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of New York, and that may be served with process at 3690 Southwestern Blvd, Orchard Park, NY 14127. D&N was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.06    Defendant, DTD HC, LLC (hereinafter "DTD" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a business operating in the state of New York, and that may be served with process at 3690 Southwestern Blvd, Orchard Park, NY 14127. DTD was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Brandon Nursing.

1.07    Norbert A. Bennett, Defendant, (hereinafter "Bennett" or "Nursing Home

Defendants" or "Brandon Nursing Defendants") is a resident citizen of New York, and that may be served with process at 3690 Southwestern Boulevard, Orchard Park, New York, 14127, or a location where he may be found. Bennett was, and remains, an owner and operator of Brandon Nursing.

1.08    Donald T. Denz, Defendant, (hereinafter "Denz" or "Nursing Home Defendants" or "Brandon Nursing Defendants") is a resident citizen of New York, and that may be served with process at 3690 Southwestern Blvd., Orchard Park, New York, 14127, or a location where he may be found.  Denz was, and remains, an owner and operator of Brandon Nursing.

1.09    Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is currently unable to identify despite diligent efforts.  Said Defendants are named insofar as their as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration, and direction of the care and treatment of, MARK STANFORD, during his residency at Brandon Nursing.  Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions or others with respect to the care and treatment of MARK STANFORD during his residency at Brandon Nursing.

1.10    Separate Defendants Unidentified Entities 1 through 10 are entities whom Plaintiff is currently unable to identify despite diligent efforts.  Defendants are named insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of MARK STANFORD during his residency at Brandon Nursing.  Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of MARK STANFORD during his residency at Brandon Nursing.

1.11    At all times material hereto, Defendants owned, operated and/or controlled Brandon Nursing Center.  The actions of each of Brandon Nursing Defendants' servants, agents

3

and employees as set forth herein, are imputed to the Brandon Nursing Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

## II.     JURISDICTION AND VENUE

2.01     Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-1.11 as if set forth herein.

2.02     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 where the amount in controversy exceeds the sum of $75,000 and where complete diversity exists.

2.03     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## III.     DEFENDANTS' JOINT VENTURE

3.01     Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-2.03 as if set forth herein.

3.02     Brandon Nursing, Aurora, DTD, D&N, Bennett and Denz (herein collectively referred to as the "Brandon Nursing Defendants") were engaged in a joint enterprise, in that:

> a.     Brandon Nursing Defendants had a mutual understanding for the common purpose of operating Brandon Nursing; and
>
> b.     Brandon Nursing Defendants each had a right to a voice in the direction and control of the means to carry out this common purpose.

3.03     There has been a close relationship between Brandon Nursing Defendants at all times relevant.

3.04     As a consequence of the joint enterprise, Brandon Nursing Defendants owed a joint duty to MR. STANFORD to use reasonable care for his safety while upon their premises and under their care and supervision at Brandon Nursing.

4

3.05    As a consequence of the joint enterprise, each Defendant's wrongful acts are imputed to and constitute the acts of the other Defendants and the failure of the Defendants shall be aggregated.

## IV.    AGENCY

4.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-3.05 as if set forth herein.

4.02    All actions of the staff and other employees and agents of Defendants who were responsible for providing care and treatment to MR. STANFORD while he was a resident with the Brandon Nursing Defendants, alleged herein, were performed within the scope of their employment or agency with Defendants.

4.03    For that reason, Defendants are vicariously liable for the actions of its nursing staff and other employees and agents in relation to the care of, or failure to care for, MR. STANFORD.

## V.    FACTUAL SUMMARY

5.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-4.03 as if set forth herein.

5.02    MR. STANFORD began his residency with the Brandon Nursing Defendants on or around May 12, 2017.

5.03    That throughout MR. STANFORD's residency, the Defendants, including any of its staff or other personnel, failed to possess and exercise that degree of care, diligence, and skill as it ordinarily possessed and exercised by minimally competent and reasonably diligent, skillful, careful and prudent nursing homes, and their staff or other personnel.

5.04    MR. STANFORD suffered injuries, deep second and third degree burns to his body (including, but not limited to, severe burns to his upper body, back, face and arms), abuse and

neglect, unexplained injuries, suffered disfigurement, poor hygiene, mental decline, and suffered

other injuries, as a result of the improper care and treatment provided to him by the Defendants

and/or their staff or other personnel throughout his residency with the Defendants.

5.05    MR. STANFORD suffered many incidents, abuse and neglect, improper care, and

injuries, including but not limited to the following:

- On January 20, 2022, Mr. Stanford suffered severe burns, injuries, and extreme pain and suffering, as a result of the Facility's negligence.  In the incident that occurred on January 20, 2022, Mr. Stanford was set on fire, in his bed within his room at the Facility, as a result of a lighter being used near his oxygen concentrator.

- MR. STANFORD suffered severe second and third degree burns on his entire upper body as a result of the Facility's negligence. The Facility failed to implement adequate safety measures, monitoring, supervision, and to have adequate policies and procedures in place to protect MR. STANFORD.

- MR. STANFORD required an extensive hospitalization (January 20, 2022 through March 10, 2022) and numerous skin graft surgeries as a result of the negligence and inaction of the Defendants.  Additionally, MR. STANFORD will require continued medical treatment for these injuries for the remainder of his life.

- The Facility failed to keep Mr. Stanford's environment free from hazards and failed to provide adequate supervision.

- MR. STANFORD suffered an overall decline in his clinical condition as a result of the Facility's negligence.

- The Facility failed to meet the standard of care in regard to the care rendered to MR. STANFORD.

5.06    The conditions reflected herein are readily apparent based on a review of MR.

STANFORD's chart. As a result of the individual and/or combined negligence, gross negligence,

reckless, and willful/wanton actions of the Defendants and/or their staff or other personnel, MR.

STANFORD suffered extensive injuries and damages, including loss of his dignity, great pain and

suffering, disfigurement, severe burns, injuries, and mental anguish. The Facility and/or their staff

or other personnel failed to meet the appropriate standard of care with regard to the care and

treatment provided to MR. STANFORD throughout his residency with Defendants.

5.07    Defendants were well-aware of MR. STANFORD's medical condition and the care that he required when they represented that they could adequately care for his needs.

5.08    At all times material to this lawsuit, Defendants held themselves out as being:

    a.    Skilled in the performance of nursing, rehabilitative and other medical support services;

    b.    Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

    c.    Able to specifically meet the total nursing home, medical, and physical therapy needs of MARK STANFORD and other residents like him; and

    d.    Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

5.09    The Defendants exercised substantial control over significant aspects of the operation and management of Brandon Nursing during MR. STANFORD's residency period, including but not limited to the creation, setting, funding and/or implementation of budgets; the hiring and training of staff; the monitoring of resident acuity levels and staffing sufficiency to meet each resident's needs; control over resident admissions and discharge to and from the facility; and the creation and enforcement of written policies and procedures pertaining to the rules that provide for the safety and well-being of residents.

5.10    Each of these managerial and operational functions had a direct impact on the quality of care delivered to MR. STANFORD and other residents at Brandon Nursing and were taken in furtherance of an operation and managerial objective over Brandon Nursing.

5.11    The Brandon Nursing Defendants substantially derive their revenue and profits from the receipt of taxpayer dollars through federally and state funded Medicare and Medicaid programs.

5.12    Residents with higher acuity levels, i.e., a greater number and degree of illnesses, place higher demands for care and services on the nursing home and its staff.

5.13    The rate at which Brandon Nursing Defendants are reimbursed by Medicare and Medicaid for the delivery of nursing home care and services, and accordingly the amount of their ultimate revenue and profits, are based upon the acuity level of the residents confined to their facilities.

5.14    The daily reimbursement rate varies based on the level of nursing care and number of therapy minutes provided to the resident.

5.15    This creates a financial incentive on nursing home corporations, including Brandon Nursing Defendants, to admit and retain residents with greater mental, physical and psychosocial needs.

5.16    Medicare and Medicaid expect and presume that the nursing home, and Brandon Nursing Defendants, will actually use the additional funds received for higher acuity level residents to meet those residents' needs, primarily through the additional employment of staff members to deliver the increased care and services.

5.17    Despite receiving additional funds from Medicare and Medicaid based upon the resident acuity levels reported to Medicare for Brandon Nursing Defendants prior to, and during, MR. STANFORD's residency period, Defendants failed to ensure, through their operational, budgetary, consultation and managerial decisions and actions, that Brandon Nursing was sufficiently staffed to meet the individual needs of MR. STANFORD during his residency period.

5.18    This lack of sufficient staff directly resulted in MR. STANFORD not receiving the very basic and necessary services to prevent, among other things, neglect and abuse leading to an avoidable injury causing severe second and third degree burns to his entire upper body.

5.19    While holding Brandon Nursing out to MR. STANFORD and other members of the public as providing excellent care, Defendants, as reflected on the Medicare and Medicaid Cost Reports – signed under penalty of perjury and filed with state and federal governments – extracted considerable profit through the management and operation of Brandon Nursing by paying management, administration and consulting fees, as well as other "costs," to the Defendants named herein and other related entities from funds which should have been utilized to hire, train and retain sufficient numbers of qualified staff to meet the needs of MR. STANFORD.

5.20    The Brandon Nursing Defendants chose not to increase staffing to meet the needs of their residents, including MARK STANFORD.

5.21    The Defendants failed to discharge their obligations of care to MARK STANFORD. As a consequence thereof, MARK STANFORD suffered catastrophic injuries, disfigurement, extreme pain and suffering, and mental anguish.  The scope and severity of the recurrent wrongs inflicted upon MARK STANFORD while under the care of the Defendants accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma as described above.

5.22    The wrongs complained of herein were of a continuing nature and occurred throughout MARK STANFORD's stay at Defendants' facility.

5.23    Plaintiff alleges that on all of the occasions complained of herein, MARK STANFORD was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

5.24    Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents,

consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of MARK STANFORD.

5.25    Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE BRANDON NURSING DEFENDANTS, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.26    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-5.25 as if set forth herein.

5.27    Defendants owed a duty to residents, including MARK STANFORD, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

5.28    Defendants owed a duty to residents, including MARK STANFORD, to exercise reasonable care in providing care and services in a safe and beneficial manner.

5.29    Defendants owed a duty to MARK STANFORD to use reasonable care to protect him from unreasonable risk of harm.

5.30    At all times relevant herein, MR. STANFORD was in a defenseless and dependent condition.  As a result of his defenseless and dependent condition, MR. STANFORD relied upon Defendants to provide for his safety, protection, care and treatment.

5.31    At all times relevant herein, Defendants had a duty to act in accordance with the standards of care required of those who own, operate, manage, maintain, and/or control a skilled nursing facility.

5.32    This duty required Defendants to implement and enforce policies and procedures to ensure the proper care for, and treatment of, residents such as MR. STANFORD.

5.33    This duty required Defendants to have sufficient and qualified staff to ensure the proper care for, and treatment of, residents such as MR. STANFORD.

5.34    This duty required Defendants to ensure that its agents, servants and/or employees were properly educated and trained with regard to the care for, and treatment of, residents such as MR. STANFORD.

5.35    The Defendants and their employees/agents breached their duty to use reasonable care in the performance of nonmedical, administrative, ministerial or routine care, for MARK STANFORD's safety.

5.36    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of MARK STANFORD.

5.37    As a direct and proximate result of the negligence of Defendants as set out above, MARK STANFORD suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required MR. STANFORD to incur significant hospital and medical expenses, in an amount of at least $1,800,891.77.

5.38    WHEREFORE, based on such conduct of Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, and disfigurement in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT TWO: MEDICAL MALPRACTICE AGAINST THE THE BRANDON NURSING DEFENDANTS, DENZ, BENNETT, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.39    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-5.38,

as if fully set forth herein.

5.40    Defendants owed a duty to residents, including MARK STANFORD, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

5.41    Defendants owed a duty to residents, including MARK STANFORD, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

5.42    Defendants owed a duty to assist all residents, including MARK STANFORD, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

5.43    Defendants failed to meet the standard of care and violated their duty of care to MARK STANFORD through mistreatment, abuse, and neglect.  The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

      a.    LEGAL COMPLIANCE – Complying with applicable federal regulations, state statutes and rules, and professional standards of care;

      b.    WELL-BEING AND QUALITY OF LIFE – Providing goods and services for MARK STANFORD necessary to avoid physical harm and mental anguish; caring for MARK STANFORD in a manner and in an environment that promoted maintenance or enhancement of his quality of life; and providing the necessary care and services for MARK STANFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

      c.    ASSESSMENT – Conducting a comprehensive, accurate, standardized reproducible assessment of MARK STANFORD's functional capacity;

      d.    CARE PLANNING – Developing and implementing a comprehensive, individualized care plan for MARK STANFORD that included measurable objectives and timetables to meet his medical, nursing, mental, and psychosocial needs;

      e.    ACCIDENTS – Ensuring that MARK STANFORD's environment remained as free from accident hazards and that he received adequate supervision and assistance devices to prevent accidents;

      f.      NURSING INTERVENTIONS – Developing and implementing new nursing interventions when Defendants' Care Plan for MARK STANFORD no longer met his needs;

      g.      SUFFICIENT STAFF – Having sufficient nursing staff to provide nursing and related services to allow MARK STANFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with his resident assessments and individual plans of care;

      h.      COMPETENT STAFF – Ensuring that direct care staff were competent in the skills and techniques necessary to care for MARK STANFORD's needs, and were able to perform their assigned duties;

      i.      CLINICAL RECORDS – Maintaining clinical records for MARK STANFORD in accordance with accepted professional standards and accepted standards of professional nursing practice; and

      j.      OTHER FAILURES – which will be shown throughout litigation.

5.44    A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of MARK STANFORD's injuries. MARK STANFORD's injuries were foreseeable to these Defendants.

5.45    Defendants' conduct in breaching the duties owed to MARK STANFORD was grossly negligent, willful, wanton, malicious and reckless.

5.46    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, MARK STANFORD suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment. As a result, MR. STANFORD incurred significant medical expenses, in an amount of at least $1,800,891.77.

5.47    WHEREFORE, based on the conduct set forth above of Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish,

disability, humiliation, and disfigurement in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF MARK STANFORD AGAINST THE BRANDON NURSING DEFENDANTS, DENZ, BENNETT, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

5.48    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 5.47, as if fully set forth herein.

5.49    The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including MARK STANFORD. Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as MARK STANFORD, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to MR. STANFORD.

5.50    The malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including MARK STANFORD, includes, but is not limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

      a.      LEGAL COMPLIANCE – Complying with applicable federal regulations, state statutes and rules, and professional standards of care;

      b.      WELL-BEING AND QUALITY OF LIFE – Providing goods and services for MARK STANFORD necessary to avoid physical harm and mental anguish; caring for MARK STANFORD in a manner and in an environment that promoted maintenance or enhancement of his quality of life; and providing the necessary care and services for MARK STANFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care;

      c.      ASSESSMENT – Conducting a comprehensive, accurate, standardized reproducible assessment of MARK STANFORD's functional capacity;

      d.      CARE PLANNING – Developing and implementing a comprehensive,

individualized care plan for MARK STANFORD that included measurable objectives and timetables to meet his medical, nursing, mental, and psychosocial needs;

e.  ACCIDENTS – Ensuring that MARK STANFORD's environment remained as free from accident hazards and that he received adequate supervision and assistance devices to prevent accidents;

f.  NURSING INTERVENTIONS – Developing and implementing new nursing interventions when Defendants' Care Plan for MARK STANFORD no longer met his needs;

g.  SUFFICIENT STAFF – Having sufficient nursing staff to provide nursing and related services to allow MARK STANFORD to attain or maintain the highest practicable physical, mental, and psychosocial well-being in accordance with his resident assessments and individual plans of care;

h.  COMPETENT STAFF – Ensuring that direct care staff were competent in the skills and techniques necessary to care for MARK STANFORD's needs, and were able to perform their assigned duties;

i.  CLINICAL RECORDS – Maintaining clinical records for MARK STANFORD in accordance with accepted professional standards and accepted standards of professional nursing practice; and

j.  OTHER FAILURES – which will be shown throughout litigation.

5.51    As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including MARK STANFORD, he suffered injuries as set herein, all of which required MR. STANFORD to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment.  Mr. Stanford's medical expenses are in an amount of at least $1,800,891.77.

5.52    WHEREFORE, based on such conduct of Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, and disfigurement in an amount to be determined by the jury, plus costs and all other relief to which

Plaintiff is entitled by law.

## PRAYER FOR RELIEF

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands that all issues of fact in the case be tried to a jury.

WHEREFORE, the Plaintiff, MARK STANFORD, by and through Erik Phillips, as Guardian and Conservator of the Person of Mark Stanford, and for his causes of action, prays for judgment against all Defendants, as follows:

1.    For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damages sustained to include economic damages in an amount of at least $1,800,891.77 and non-economic damages in an amount of at least $5,000,000.00;

2.    For all general and special damages caused by the alleged conduct of Defendants;

3.    For the costs of litigating this case;

4.    For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities, in an amount of $20,000,000.00; and

5.    For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the _7th_ day of October, 2022.

PLAINTIFF, MARK STANFORD, BY AND
THROUGH ERIK PHILLIPS, AS GUARDIAN
AND CONSERVATOR OF THE PERSON OF
MARK STANFORD

BY: _____
        R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129 B. SOUTH PRESIDENT ST. (39201)
Post Office Box 23785
Jackson, Mississippi  39225
Tel:    (601) 949-5080
Fax:   (601) 949-5538
Email: paul@wnwlegal.com
           courtney@wnwlegal.com
           matt@wnwlegal.com